UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| RICHARD MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO.  C06-684-MJP-MJB |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE,[1] | ) | REPORT AND RECOMMENDATION |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Richard Martin appeals to the United States District Court from a final decision

of the Commissioner of the Social Security Administration (the "Commissioner") denying his

applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income

("SSI") under Titles II and XVI of the Social Security of Act.  For the reasons set forth below,

it is recommended that the Commissioner's decisions be REVERSED and this matter

REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative

proceedings.

---

[1]Michael J. Astrue, who was sworn in as Commissioner of Social Security on February 12, 2007,
is substituted as the defendant pursuant to F.R.C.P. 25(d)(1) and 42 U.S.C. § 405(g).

REPORT AND RECOMMENDATION
Page - 1

## I.  PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB and SSI in August 2002.  Tr. 64.  He alleges disability since July 16, 2002, identifying his impairments as pain in his hands, wrists, shoulders, spine, neck, left hip and knees, numbness, headaches, fatigue, blurry vision, and depression.  Tr. 64, 81, 95.  The Social Security Administration denied Plaintiff's application initially and upon reconsideration.  Tr. 26, 28, 34, 37.  A hearing was held before Administrative Law Judge ("ALJ") Arthur Joyner on April 8, 2005.  Tr. 25, 298.  Plaintiff, who was represented by counsel, testified at the hearing.  Tr. 302- 321.  A medical expert, Charles Slater, Ph.D., and a vocational expert, Leta Berkshire, also testified at the hearing.  Tr. 321-336.  The ALJ issued an unfavorable decision on August 3, 2005, finding that Plaintiff was not disabled.  Tr. 17-25.  On March 20, 2006, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 6-8.  Plaintiff timely filed his appeal with this Court.

## II.  THE PARTIES' POSITIONS

Plaintiff asks the Court to reverse the Commissioner's decision and remand for an award of benefits because the ALJ's medical expert testified that Plaintiff was disabled at step three, and the ALJ failed to provide legally sufficient reasons for rejecting that opinion.  Dkt. #12 at 6-11.  Alternatively, Plaintiff asks the Court to reverse and remand this matter for further administrative proceedings so that an ALJ can fairly and properly evaluate the medical expert's opinion, and because the ALJ:  (1) failed to adequately evaluate evidence that Plaintiff had a significantly limited ability to respond appropriately to supervisors; (2) erroneously rejected the opinions of two examining mental health professionals; (3) failed to give legally sufficient reasons for rejecting non-examining state-agency physician Dr. Hoskin's opinion that Plaintiff could not perform repetitive fingering; (4) misapplied 20 C.F.R. 404.1530 (2006), the failure-to

REPORT AND RECOMMENDATION
Page - 2

follow-prescribed-treatment regulation; (5) failed to provide clear and convincing reasons for finding Plaintiff not credible; and (6) failed to comply with SSR 00-44p, which requires an ALJ to ask a vocational expert whether his or her testimony is consistent with the Dictionary of Occupational Titles ("DOT"). *Id.* at 12-23.

The Commissioner agrees that the ALJ erred in evaluating Plaintiff's DIB and SSI applications and that the ALJ's errors compel reversal of his decision. Dkt. #16 at 6. However, the Commissioner argues that this matter should be remanded for further administrative proceedings because there are unresolved issues and the record does not clearly require a finding of disability.[2] *Id.* The Commissioner seeks further proceedings so that the ALJ will: (1) fully address and explain the weight assigned to the medical expert's opinion; (2) if necessary, obtain supplemental medical expert testimony; and (3) if the decision proceeds beyond step three of the sequential evaluation, then reassess the claimant's residual functional capacity, and, if warranted by the expanded record, obtain supplemental vocational expert evidence. *Id.* at 8.

### III.  SUMMARY OF RECORD EVIDENCE

Plaintiff was 30 years old at the onset of the alleged disability. Tr. 64. He has a high school education (Tr. 87), and prior work as an artist, carpenter's aid, cook, dishwasher, painter, janitor, delivery driver, auto mechanic, material handler, window assembler, parts salvager, and construction laborer. (Tr. 69-75, 82, 94, 106-12). Other evidence relevant to Plaintiff's claims is incorporated into the discussion below.

### THE ALJ'S DECISION

---

[2]The Commissioner contends that: (1) the ALJ addressed only portions of the medical expert's testimony; (2) the ALJ provided no rationale explaining how he determined the claimant's limitations in the broad areas of functioning; and 3) the ALJ found that Plaintiff had no severe physical impairment, yet provided no rationale for the RFC limitation to light exertion. Dkt. #16 at 8.

REPORT AND RECOMMENDATION
Page - 3

1    At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity

2    since the alleged onset date.  Tr. 18, 24.  At step two, the ALJ identified Plaintiff's severe

3    impairments as a depressive disorder with psychosis and a somatoform disorder.  *Id.*  At step

4    three, the ALJ determined that Plaintiff's impairments did not meet or equal the criteria of any

5    impairment in the Listings.  *See* Tr. 18, 24.  At step four, the ALJ found that Plaintiff retains the

6    residual functional capacity to perform light work.  Tr. 22, 24.  Additionally, the ALJ found that

7    Plaintiff can perform detailed but not complex tasks, he should have limited contact with co-

8    workers and no contact with the public, and he has no other significant limitations.  Tr. 23, 24.

9    The ALJ also found that Plaintiff could not perform his past relevant work.  Tr. 23, 24.  In

10   making these findings, the ALJ determined that Plaintiff's statements concerning his

11   impairments and their impact on his ability to work are not entirely credible.  Tr. 22, 24.  At

12   step five, the ALJ found that although Plaintiff is unable to perform a full range of light work,

13   he is capable of unskilled jobs such as laundry worker folder, parking meter coin collector, and

14   hotel/motel housekeeper.  Tr. 23, 24.  Accordingly, the ALJ concluded that Plaintiff is not

15   under a disability as defined in the Social Security Act.  *Id.*

16                              V.  STANDARD OF REVIEW

17       The court may set aside the Commissioner's denial of social security disability benefits

18   when the ALJ's findings are based on legal error or not supported by substantial evidence in the

19   record as a whole.  *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence is

20   defined as more than a mere scintilla but less than a preponderance; it is such relevant evidence

21   as a reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*,

22   881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving

23   conflicts in medical testimony, and for resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d

24   1035, 1039 (9th Cir. 1995).  Where the evidence is susceptible to more than

25

26   REPORT AND RECOMMENDATION
     Page - 4

1   one rational interpretation, it is the Commissioner's conclusion which must be upheld.  *Sample*

2   *v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

3                                        VI.  DISCUSSION

4           The parties agree that the Commissioner's decision should be reversed.  Thus, the

5   principle issue here is whether to remand for an award of benefits or for further administrative

6   proceedings.  This Court may direct an award of benefits where the record has been fully

7   developed and where administrative proceedings would serve no useful purpose.  *Swenson v.*

8   *Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989).  Specifically, in determining when evidence should

9   be credited and an immediate award of benefits directed, this Court applies the following test:

10          (1) the ALJ has failed to provide legally sufficient reasons for rejecting such
            evidence, (2) there are no outstanding issues that must be resolved before a
11          determination of disability can be made, and (3) it is clear from the record that
            the ALJ would be required to find the claimant disabled were such evidence
12          credited.

13  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*citing Smolen v. Chater*, 80 F.3d 1273,

14  1292 (9th Cir. 1996)).  The decision to remand for further administrative proceedings depends

15  on the utility of such proceedings.  *Harman*, 211 F.3d at 1179.

16          Plaintiff claims that this case should be remanded for an award of benefits because the

17  ALJ's medical expert ("ME"), Dr. Slater, testified that Plaintiff was disabled at step three, and

18  the ALJ failed to provide legally significant reasons for rejecting the ME's opinion.  The

19  Commissioner does not directly respond to this claim.  Instead, the Commissioner argues that

20  remand for further proceedings is appropriate because the ALJ addressed only portions of the

21  ME's testimony.  For the reasons discussed below, this Court concludes that step two of the

22  *Smolen* test is not met; therefore, remand for further administrative proceedings is appropriate

23  in this case.

24  A.      ALJ's Assessment of the ME's Testimony

25
    REPORT AND RECOMMENDATION
26  Page - 5

1    In this case, the ME did not expressly state that Plaintiff was disabled at step three.[3]

2    However, the ME's overall testimony implicitly supports that conclusion.[4]  First, he opined that

3    "at one place or another in the record" there is: (a) under 12.04 (Affective Disorders) -

4    depressive syndrome characterized by anhedonia or pervasive loss of interest in almost all

5    activities, sleep disturbance, decreased energy, difficulty concentrating or thinking, or thoughts

6    of suicide, and at least one visual hallucination; (b) under 12.06 (Anxiety-Related Disorders) -

7    anxiety NOS; (c) under 12.07 (Somatoform Disorders) -  pain disorder with medical,

8    psychologic factors; and (d) under 12.08 (Personality Disorders) - paranoid personality disorder

9    with pathologically inappropriate suspiciousness or hostility, persistent disturbances of mood or

10   affect, pathological dependence, passivity, or aggressivity, and impulsive and damaging

11   behavior.  Tr. 322-23.  For the "B" criteria, commenting only on the psychological at the ALJ's

12   direction, the ME opined that Plaintiff has a moderate degree of functional limitation in his

13   activities of daily living; marked limitation in maintaining social functioning; marked limitation in

14   maintaining concentration and moderate limitation in maintaining persistence or pace; and no

15   episodes of decompensation.  Tr. 323.  Regarding the "C" criteria, the ME testified that "with

---

[3]This Court notes that in testifying about Plaintiff's impairments, the ME appears to make abbreviated references to the mental disorder categories and the "B" and "C" criteria of the Listings as represented on a Psychiatric Review Technique Form ("PRTF").  *See* Tr. 321-23.  Thus, for purposes of clarity in discussing the ME's opinion, the Court has substituted the relevant text from the PRTF in place of the ME's abbreviated references.

[4]While Plaintiff maintains that his condition satisfies the requirements of Listings 12.04, 12.05, 12.07, and 12.08, he focused his analysis on Listings 12.04 and 12.07 because the ALJ accepted that he has depression and a somatoform disorder.  Dkt. #12 at 7-8.  Listing 12.04 is met when the requirements in A (a set of medical findings) and B (a set of impairment-related functional limitations) are satisfied, or when the requirements in C (additional functional criteria) are satisfied.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 12.04.  Listing 12.07 is met when the requirements in both A and B are satisfied.  *Id.,* Sec. 12.07.

REPORT AND RECOMMENDATION
Page - 6

his psychologic dysfunction," Plaintiff would satisfy the criteria of Section 1, number 2.[5]  *Id.*

Lastly, in response to a question from Plaintiff's counsel, the ME indicated that Plaintiff's

psychological impairment would go as far back as July of 2002.  *Id.*

> In his decision, the ALJ summarized the ME's testimony as follows:

> At the hearing an expert witness, Charles Slater, Ph.D., reviewed the evidence
> and attended the claimant's testimony.  He stated that the claimant had a severe
> affective disorder with a long history of anger and rage, and unwillingness to
> work on that in a mental health setting. He [the claimant] did not trust people
> and did not care about relationships.

Tr. 20.  The ALJ indicates that he did not "entirely credit" the ME's opinion based on the

following three reasons: (1) the ME "did not offer support from the record"; (2) the record

"does not reflect 'a long history' of psychiatric symptoms"; and (3) the ME "clearly relied on

the claimant's testimony at the hearing and his subjective statements recorded in the consultative

examination report, both of which are unreliable because of the claimant's lack of credibility."

*Id.*

> Plaintiff argues that the ALJ's comments do not constitute legally sufficient reasons for

rejecting the ME's opinion about step three.  Plaintiff challenges the ALJ's first reason because

the ME did mention record evidence, and even if the ME did not provide "an elaborate

explanation" for his opinion, the ALJ did not ask him a single question. Dkt. #12 at 11.  This

Court agrees that the ALJ's first reason was not legally sufficient in that it merely reflects the

fact that the ME did not identify supporting evidence in his testimony.  However, in describing

Plaintiff's mental impairments, the ME did broadly indicate that evidence of the identified

mental impairments was present at "one place or another in the record." Tr. 322.  In this

---

[5]Section 1, number 2 of the "C"criteria on the PRTF states "[a] residual disease process that has
resulted in such marginal adjustment that even a minimal increase in mental demands or change in the
environment would be predicted to cause the individual to decompensate."  *See* Social Security Disability
Claims Handbook (SSDCHBK) § 9:51.

REPORT AND RECOMMENDATION
Page - 7

context, the ALJ's first reason does not refute the presence of evidence in the record that supports the ME's testimony; instead, it only establishes that such evidence was not specifically discussed.  The ALJ's first reason is further diminished by the fact that not only did he fail to ask the ME any questions, but the ALJ also denied the subsequent request by Plaintiff's counsel to ask the ME one more question.[6]  *See* Tr. 324-326.  Plaintiff's counsel indicated that he wanted to ask the ME "if he agrees with Dr. T[h]om's limitations set forth in 13-F," which refers to a medical source statement regarding Plaintiff's ability to do work-related mental activities.  Tr. 325; *see also* Tr. 238-40.

Plaintiff challenges the legal sufficiency of the ALJ's second reason because the ALJ elsewhere recognized that Plaintiff had a long history of failure to undergo mental health treatment.  *Id.*  Dkt. #12 at 11.  Careful review of the ALJ's second reason shows that Plaintiff's argument here is misdirected.  The ALJ's second reason reflects his determination that Plaintiff's medical record does not reflect a "long history" of "psychiatric symptoms."  As support for this conclusion, the ALJ expressly notes that "the record is very sparse, consisting of a few treatment note[s] from the claimant's primary physician showing he responded to a limited trial of a[n] antidepressant and two, widely separated psychological evaluations conducted in relationship to claimant's attempt to get monetary benefits."  Tr. 20.  Thus, although the ALJ recognized several times in his decision that Plaintiff has not sought "psychiatric treatment" (Tr. 19, 20, 21, 22), those references to the lack of treatment are not inconsistent with the ALJ's conclusion that the record is very limited and not reflective of a "long history" of mental impairments.

Plaintiff also challenges the legal sufficiency of the ALJ's comment about Plaintiff's lack

---

[6]Plaintiff's counsel made this request near the beginning of the ALJ's questioning of the vocational expert, who testified immediately after the ME.

REPORT AND RECOMMENDATION
Page - 8

1  of credibility because the ALJ did not mention which of Plaintiff's statements about his mental

2  condition were false or exaggerated. Dkt. #12 at 11. However, while the ALJ did not explain

3  the basis for rejecting Plaintiff's credibility during his assessment of the ME's opinion, the ALJ's

4  decision later identifies reasons why he found Plaintiff's testimony to be exaggerated and

5  unreliable. Tr. 22. Among those reasons, the ALJ points out that although Plaintiff testified

6  that he took anti-depressants but they did not work, his doctor reported that they did work and

7  Plaintiff's depression improved to the point that the diagnosis was dropped from his chart. *Id.*

8  The ALJ also notes that Plaintiff has not had psychiatric therapy and has taken no medication.

9  *Id.* These reasons, which are plainly related to Plaintiff's mental impairments, are supported by

10  substantial evidence in the record. *See* Tr. 172-188 (showing Plaintiff's depression diagnosis in

11  August 1982, improvement in his depression starting in September 2002 with use of Celexa, and

12  the depression diagnosis no longer in his chart in December 2002).

13  Yet, despite the fact that two of the ALJ's three reasons appear to be legally sufficient, it

14  is not clear from the record that the ALJ's reasoning was based on an evaluation of the full

15  scope of the ME's opinion. The ALJ must consider all relevant evidence and may not select and

16  discuss only that evidence that favors his ultimate conclusion. *See Herron v. Shalala*, 19 F.3d

17  329, 333 (7th Cir. 1994); *see also Young v. Secretary of Health and Human Services*, 957 F.2d

18  386, 393 (7th Cir. 1992) (ALJ must articulate his reason for rejecting evidence "within

19  reasonable limits" in order for meaningful appellate review).

20  Here, this Court notes that the ALJ's summary of the ME's opinion encompassed only

21  the ME's narrative basis for the opinion.[7] More significantly, as argued by both parties, the ALJ

22  _____

23  [7]Before stating his opinion, at the ALJ's request, the ME, gave the following narrative basis for his opinion:

24  

25  The basis of why I, for . . . the "A" criteria, *the record is long history of, you know, anger, and rage, and, and [sic] unwillingness to start to examine that[,] work on that in*

REPORT AND RECOMMENDATION

26  Page - 9

neither acknowledges or addresses the ME's assessment that Plaintiff's functional limitations include a "marked" degree of limitation in maintaining social functioning and in maintaining concentration.  *See* Dkt. #12 at 9-10; Dkt. #16 at 7.  Given that "marked" limitation in two of the four broad functional areas clearly satisfies the "B" criteria under Listings 12.04 and 12.07, the ALJ's failure to mention this portion of the ME's opinion makes it impossible for this Court to tell if this significant probative evidence was not credited or simply ignored.  The ALJ's failure to address the functional limitations identified by the ME is made even more troublesome by the fact that, without explanation, the ALJ concluded that Plaintiff is only "mildly" limited in activities of daily living; in social functioning; and in concentration, persistence and pace.  Tr. 21.

In light of the above, this Court concludes that there are unresolved issues regarding the ME's testimony.  Therefore, remand for further proceedings is appropriate so that: (a) the ALJ can reevaluate the ME's opinion, fully addressing and explaining the weight accorded to the ME's opinion about step three; and (b) if necessary, obtain supplemental testimony from the same ME.  If, after reevaluation of the ME's opinion, the decision proceeds beyond step three of the sequential evaluation, then the ALJ shall reassess Plaintiff's residual functional capacity, and if warranted obtain supplemental vocational expert evidence in accordance with the remainder of the discussion.

B.      Outstanding Issues to Be Resolved

---

*a mental health setting.*  He has developed a relatively few remarks in the record of, on [sic] his developmental history, indicate it was pretty poor and, and [sic] full of anger, being taken out on him at times, much of the time.  And he developed into a man who has a lot of, as he says, no trust in people, doesn't care about relationships.  And those, those result in current, various diagnoses.

Tr. 322 (emphasis added).

REPORT AND RECOMMENDATION
Page - 10

Plaintiff has presented six additional claims of error by the ALJ, which the Commissioner failed to address in his response brief.  *See supra* Part II.  Plaintiff argues that because the Commissioner was unresponsive to these issues, the Court may fairly conclude that the ALJ made the six underlying errors and should not repeat them on remand.  Dkt. #17 at 2.  Having carefully reviewed the record in light of each claim, this Court concludes that there are outstanding issues to be resolved and remand for further administrative proceedings is appropriate on four of the six claims.  Accordingly, on remand, in addition to reevaluating the ME's opinion as discussed in section A *supra*, the ALJ shall:

- Properly evaluate the opinion evidence from Dr. Hammer, Dr. Robinson, Dr. Peterson and Dr. Thom that Plaintiff had a significantly limited ability to respond appropriately to supervisors;

- Properly evaluate the opinion evidence from Dr. Thom and Dr. Hammer that Plaintiff had significant limitation in his ability to respond appropriately to pressures in a usual work setting;

- Reevaluate evidence that Plaintiff had a significant restriction in his ability to perform fine manipulation (fingering); and

- Follow SSR 00-4p which sets out an affirmative duty for the ALJ to ask the VE whether the evidence he or she has provided is consistent with the DOT.  *See Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006).

C.   Plaintiff's Remaining Claims

     1.   *ALJ's Assessment of Plaintiff's Credibility*

Plaintiff claims that substantial evidence does not support the ALJ's adverse credibility finding.  Dkt. #12 at 20.  He argues that the ALJ erroneously considered him not credible on the ground that he had a poor work record, based on his activities of daily living, and that he did

REPORT AND RECOMMENDATION
Page - 11

not seek treatment from a psychiatrist. *Id.* at 21. This Court concludes that the ALJ did not err in his assessment of Plaintiff's credibility.

The ALJ's reasons for rejecting Plaintiff's testimony must be "clear and convincing," unless there is affirmative evidence showing that the claimant is malingering. *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). In assessing credibility, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluations, such as the claimant's reputation for lying and prior inconsistent statements concerning the symptoms; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; and (4) medical evidence tending to discount the severity of subjective claims. *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001).

Here, the ALJ identified several reasons for finding that Plaintiff's statements about his impairments and limitations were not entirely credible. First, the ALJ noted that despite claims of disabling pain and severe psychiatric symptoms, Plaintiff has neither sought or received medical or psychiatric treatment since January 2003, despite being on GAU and having access to medical coupons. Tr. 22. Although Plaintiff argues that his mental condition interfered with his obtaining mental health treatment (Dkt. #12 at 21), he points to no facts in the record that supports this claim. Moreover, there is no evidence in the record that Plaintiff was ever denied medical or psychiatric treatment, that economic reasons precluded his access to treatment, or that he was unaware of the need for such treatment. Consequently, it was not unreasonable for the ALJ to conclude that Plaintiff's resistance to treatment, while simultaneously reporting chronic pain and depression, suggests that his condition was not as severe as alleged.

Next, the ALJ noted that Plaintiff's objective testing and physical examinations have been essentially normal. *Id.* This constitutes a clear and convincing reason because although Plaintiff reported chronic knee-joint pain, chronic shortness of breath, bilateral hand pain, and

REPORT AND RECOMMENDATION
Page - 12

1    back and neck pain, the record is replete with evidence of unremarkable test results.  *See* Tr.

2    193 (knee x-rays showed no significant abnormalities), Tr. 194 (chest scans show normal

3    results), Tr. 196-97 (x-rays of hand and joint spaces showed no significant abnormality), and Tr.

4    198-99 (cervical and lumbar x-rays showed mild degenerative changes, normal results).

5         The ALJ further stated that Plaintiff's earning record reflected that he had never worked

6    much, with many years of either part-time or sporadic work and with only 4-6 of the past 15

7    years having income above substantial gainful earnings.  The ALJ indicated that this record

8    suggests that rather than being related to a medical impairment, Plaintiff's continuing

9    unemployment was consistent with his lifelong choices.  *Id.*   Plaintiff challenges the ALJ's

10   interpretation of his work record, arguing that the marginal work record corroborates his claim

11   of disability.  However, because Plaintiff's earnings record is subject to more than one

12   reasonable interpretation, this Court finds that the ALJ did not err in relying on his

13   interpretation of this evidence as one of several reasons for the adverse credibility finding.  *See*

14   *Sample*, 694 F.2d at 642 (Commissioner's conclusion must be upheld where evidence is subject

15   to more than one rational interpretation).

16        The ALJ also found Plaintiff's testimony exaggerated and unreliable because, as

17   discussed in Section A *supra*, the medical record did not support Plaintiff's claim that when he

18   took anti-depressants they did not work.  The ALJ also noted that on the one hand, Plaintiff

19   testified that he does small loads of laundry, vacuums his room, grocery shops and sees friends

20   or family he does not live with, but later Plaintiff asserted he stays alone in a darkened room.

21   *Id.*  Because such inconsistency with the objective medical record, as well as internal

22   inconsistency in a claimant's testimony, are properly considered by the ALJ when assessing

23   credibility, these reasons provided a clear and convincing basis for finding Plaintiff not credible.

24        2.    *ALJ's Application of 20 C.F.R. § 404.1530*

25

26   REPORT AND RECOMMENDATION
     Page - 13

1    Plaintiff argues that the ALJ misapplied 20 C.F.R. § 404.1530, the failure-to-follow-

2    prescribed treatment regulation.  Plaintiff correctly notes that a determination that the disability

3    criteria are satisfied is a condition precedent to application of this regulation.  *See* SSR 82-59

4    (stating the policy and describing the criteria necessary for finding a failure to follow prescribed

5    treatment when evaluating disability).  Thus, the ALJ erred in applying § 404.1530 in this case

6    when he had not made a prior determination of disability.

## VI.  CONCLUSION

The Commissioner's determination to deny Plaintiff DIB and SSI benefits is not

supported by substantial evidence and is not free of legal error.  Based on the record evidence,

the undersigned recommends that the Commissioner's decision be reversed and remanded for

further administrative proceedings, consistent with the the above discussion.  A proposed Order

accompanies this Report and Recommendation.

DATED this 20th day of April, 2007.


_____
MONICA J. BENTON
United States Magistrate Judge


REPORT AND RECOMMENDATION
Page - 14